IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 8, 2010 Session

## MAXWELL MEDICAL, INC., Successor in Interest to Max Well Medical, LLC. v. LOREN L. CHUMLEY, COMMISSIONER OF REVENUE, STATE OF TENNESSEE

Direct Appeal from the Chancery Court for Davidson County
No. 04-1548-1     Claudia C. Bonnyman, Chancellor

No. M2009-01693-COA-R3-CV - Filed October 12, 2010

The trial court determined that glucometers sold by Plaintiff taxpayer during the tax period January 1, 2001, through September 30, 2003, were not exempt from sales and use tax under Tennessee Code Annotated § 67-6-314(5)(1998). The trial court entered summary judgment in favor of the Commissioner of Revenue. Plaintiff taxpayer appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Charles A. Trost, Brett R. Carter and Christopher A. Wilson, Nashville, Tennessee, for the appellant, Maxwell Medical, Inc.

Robert E. Cooper, Jr., Attorney General and Reporter, Michael E. Moore, Solicitor General, and Mary Ellen Knack, Senior Counsel, for the appellee, Loren L. Chumley, Commissioner of Revenue, State of Tennessee.

## OPINION

This appeal arises from the trial court's award of summary judgment to Defendant Loren L. Chumley, Commissioner of Revenue ("the Commissioner") following cross-motions for summary judgment. The facts are undisputed. Plaintiff/taxpayer Maxwell Medical, Inc. ("Maxwell Medical") is a Delaware corporation that sells "glucometers" and related components. In May 2004, Maxwell Medical filed a complaint for a refund of sales and use tax for the tax period January 1, 2001, through September 30, 2003, in the Chancery

Court for Davidson County. In its complaint, Maxwell Medical asserted that the glucometers and related products (collectively, "glucometers") were exempt from Tennessee sales and use tax under Tennessee Code Annotated section 67-6-314(5)(1998).[1] The parties filed cross-motions for summary judgment, which were heard by a substitute judge in August 2006. In June 2007, the substitute judge entered judgment in favor of the Commissioner. Upon appeal by Maxwell Medical, this Court determined, *sua sponte*, that the substitute judge was not designated properly in accordance with the relevant statutory and case law. We accordingly vacated the award of summary judgment and remanded the matter to the trial court.

Upon remand, the parties' cross-motions for summary judgment were heard by the chancery court in May 2009. The trial court determined that the glucometers sold by Maxwell Medical were not exempt from taxation under Tennessee Code Annotated § 67-6-314(5)(1998) because they cannot be characterized as "prosthetics" under *Cordis Corporation v. Taylor*, 762 S.W.2d 138 (Tenn. 1988). The trial court awarded summary judgment to the Commissioner by final judgment entered on July 17, 2009.[2] Maxwell Medical filed a timely notice of appeal on August 17, 2009, and oral argument was heard by the Western Section of this Court sitting in Nashville on September 8, 2010.

### *Issue Presented*

Maxwell Medical presents the following issue for our review:

Whether the trial court erred in finding that glucometers and related components, devices used to replace or augment the glucose monitoring and measuring function in the body and as part of a system to "imitate a properly functioning pancreatic system," do not qualify for Tennessee's sales and use tax exemption for "prosthetics" under Tenn. Code Ann. § 67-6-314(5).

### *Standard of Review*

We review a trial court's award of summary judgment *de novo*, with no presumption of correctness, reviewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Martin v. Norfolk Southern Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted). Summary judgment is appropriate only

---

[1] The 1998 version of the Code is applicable to the relevant tax period.

[2] The trial court reserved the determination of the amount of attorney's fees and litigation expenses to be awarded to the Commissioner pending appeal, and entered final judgment in the matter pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure.

where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* at 83 (quoting Tenn. R. Civ. P. 56.04). The burden is on the moving party to demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id.* (citations omitted).

## *Discussion*

As noted above, this lawsuit involves no factual dispute. The only matter to be determined is whether glucometers, devises used by diabetic patients to measure glucose levels in the blood, are properly characterized as "prosthetics" for the purposes of the tax exemption provided by section 67-6-314(5)(1998). The statute as it existed during the relevant tax period provided:

> There is exempt from the sales tax imposed by this chapter:
> (1) The transfer of an artificial limb to a person who has need for such artificial limb due to loss of an arm or leg or any part thereof, and the retail sale of lift devices designed to permit ingress and egress of handicapped persons confined to wheelchairs from their residences or personal motor vehicles;
> (2) The sale of any item necessary for the use or wearing of any artificial limb;
> (3) The sale of a wheelchair to a handicapped person who has need for such device;
> (4) The sale of, to handicapped persons who personally use such items, any necessary maintenance service on any artificial limb, lift device, or wheelchair;
> (5) The sale or repair of prosthetics, orthotics, special molded orthopedic shoes, walkers, crutches, surgical supports of all kinds, and other similarly medical corrective or support appliances and devices; and
> (6) The sale of computer software, designed for the use in the treatment of individuals with a learning disability and having no residual value for any other purpose, that is prescribed by a licensed practitioner of the healing arts for use in the treatment of an individual.

Tennessee Code Annotated § 67-6-314 (1998).

Both parties rely on the Tennessee Supreme Court's definition of "prosthetics" in *Cordis Corporation v. Taylor*, 762 S.W.2d 138 (Tenn. 1988), to support their positions. In

*Cordis*, the supreme court held that the implantable cardiac pacemakers and hydrocephalus valve systems sold by plaintiff Cordis Corporation were exempt from taxation as "prosthetics" under section 67-6-314(5). *Cordis*, 762 S.W.2d at 139. The *Cordis* court opined that "generally accepted medical definitions" were the appropriate definitions to be utilized when construing section 67-6-314. It adopted the definition of "prosthetic" as defined by Tabor's Cyclopedic Medical Dictionary and proffered by plaintiff:

> 1. Replacement of a missing part by an artificial substitute, such as an artificial extremity. . . . 2. An artificial organ or part. 3. Device to augment performance of a natural function such as a hearing aid.

*Id.* at 140. The *Cordis* court held that, although a hydrocephalus valve system did not physically replace the "almost microscopic valves" through which fluid ordinarily flows from the brain into the body, it functionally replaced them by enabling the fluid to "circumvent the faulty valve system" and flow through the hydrocephalus valve system. *Id.* at 139-140. Similarly, the court concluded that pacemakers replace or augment a "missing or irregular natural pulse" by "provid[ing] an artificial steady electric pulse." *Id.* at 139. Thus, although the patient's body parts were not physically replaced by the non-organic devices where the body parts remained, the devices nevertheless were characterized as prosthetics where they functioned as substitutes for body parts.

Maxwell Medical asserts the glucometers qualify for the exemption because they "replace the body's normal function of internally monitoring blood glucose levels," a function normally performed by the pancreas. Maxwell Medical contends,

> [s]pecifically, without a glucose monitoring system a diabetic would have no way of knowing the timing and dose of insulin required to crudely match the pancreatic function. Thus, it is undisputed that a glucometer alone performs a vital bodily function by monitoring blood glucose levels, a function performed internally in a normally functioning body.

The Commissioner, on the other hand, asserts that the glucometers and related supplies neither replace a body party nor augment the performance of a malfunctioning body part. The Commissioner asserts that Stedman's Medical Dictionary for the Health Professions & Nursing 603 (5th ed 2005) defines a glucometer as "a device used to measure sugar levels in blood." She contends that although the measurement obtained by the glucometer is used to prescribe the appropriate treatment, the glucometer does not replace a body part or enhance its function.

Upon review of the evidence in the record, we must agree with the Commissioner and

-4-

the trial court that a glucometer does not perform the function of the pancreas. The expert deposition testimony contained in the record demonstrates that, although it clearly measures the level of glucose in a patient's blood, the device neither regulates nor controls blood sugar levels. A glucometer is not permanently attached to a patient, but is used periodically throughout the day to monitor blood sugar. It does not augment the ability of the pancreas to perform its regulatory function within the body, but rather measures the extent to which the pancreas is, in fact, performing its function. A glucometer does not functionally replace a human pancreas where it does not augment its ability to regulate glucose levels. Rather, a glucometer is a device used to ascertain the amount of glucose in a patient's blood in order to determine the appropriate treatment. Mosby's Medical Dictionary defines "glucometer" as a "trademark for a battery-powered instrument used to calculate blood glucose from as little as one drop of blood. Also called blood glucose monitor." Mosby's Medical Dictionary (8th ed.. 2009)(available at http://medical-dictionary.thefreedictionary.com/Glucometer).

Unlike the implantable cardiac pacemakers and hydrocephalus valve systems considered by the *Cordis* court, glucometers do not function as a substitute for a body part. We agree with the Commissioner that a glucometer, as the term suggests, is a measurement tool, not a prosthetic devise for the purposes of Tennessee Code Annotated 67-6-314(5).

### *Holding*

In light of the foregoing, we affirm the award of summary judgment to the Commissioner. Costs of this appeal are taxed to the Appellant, Maxwell Medical, Inc., and its surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE